```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GEORGE LEITCH, et al.          :        CIVIL ACTION
                               :
          v.                   :
                               :
MVM, INC., et al.              :        NO. 03-4344
```

MEMORANDUM

Bartle, C.J.                                    November 19, 2007

The four remaining plaintiffs[1] in this action, Benjamin Adams, William Burge, Lawrence Churm, and Donald Smith, were Court Security Officers ("CSOs") charged with protecting federal courthouses who have sued MVM, Inc., their former employer, as well as the United States Marshals Service ("USMS"), the Department of Justice, Attorney General John Ashcroft, and the United States (collectively, the "Federal Defendants"). These plaintiffs contend that they were wrongfully terminated after they were medically disqualified by the USMS from their CSO positions and subsequently terminated by MVM. Plaintiffs Burge, Churm, and Smith have claims against the Federal Defendants for

---

1.  The instant matter began as a putative class action. Since then, the court has dismissed or entered judgment as to a variety of the claims brought by these and other plaintiffs. The court additionally denied the plaintiff's motion to certify a class action. This opinion addresses the remaining four plaintiffs and their claims.

The court stayed this action pending the decision of the Court of Appeals in a related action, Wilson v. MVM, Inc., 475 F.3d 166 (3d Cir. 2007).

violation of § 504 of the Rehabilitation Act and the due process clause of the Fifth Amendment.  Smith has an additional due process claim against MVM.  The fourth plaintiff, Benjamin Adams, has a Rehabilitation Act claim against the Federal Defendants and discrimination claims against MVM.  Before the court are the motions of MVM and the Federal Defendants for summary judgment on each of the plaintiff's claims.

I.

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see Fed. R. Civ. P. 56(c).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant.  In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II.

The USMS has a statutory obligation to provide for the security of the United States Courts, 28 U.S.C. § 566(a).  To meet this obligation, the USMS contracts with a number of private security companies, including MVM.  Beginning in June, 2002, the USMS implemented uniform medical standards and procedures for the CSO position.  The history of the decision to implement these medical requirements, as well as the relationship between the

-2-

CSOs, MVM and the USMS, has been well documented in a number of earlier opinions.  E.g. Wilson v. MVM, Inc., 2005 WL 1231968 (E.D. Pa. 2005).  We will not repeat that history here, but merely reiterate that as a result of the new medical standards, each CSO is required to have an annual medical examination to determine if he or she meets the medical qualification for the CSO position.  The medical records from that examination are sent to a reviewing physician employed by the USMS, who either accepts the CSO as medically qualified or informs the CSO that his or her status is "not medically qualified" and states that a final determination will be deferred pending further documentation. After receiving a "not medically qualified" letter, the CSO has 30 days to submit any additional medical documentation.

The facts as they pertain to the four plaintiffs remaining in this action are as follows.  Plaintiff Adams began working as a CSO for MVM on October 1, 2001 and submitted to a required annual medical examination in January of 2002.  In March of that year, the USMS reviewing doctor determined that he required additional medical information before deciding whether Adams was medically qualified to work as a CSO.  Adams did not respond to this request and apparently the USMS did not take any action at that time.  After Adams' next annual medical examination in April of 2003, the USMS reviewing doctor again requested additional information regarding Adams' cardiac condition, diabetes, blood pressure and hearing.  In November, 2003, the reviewing doctor concluded that Adams was not medically

-3-

qualified to perform the essential functions of the CSO position because his diabetes was not under control.  USMS sent a letter to that effect to MVM on May 4, 2004, and on May 5, MVM removed Adams from the USMS contract and terminated him.  MVM offered Adams a position on a contract it had with the General Services Administration, but Adams rejected this offer.

Plaintiff Burge began working for MVM as a CSO on October 1, 2001 and submitted to a required annual medical examination in January of 2002.  In April of that year, the USMS reviewing doctor requested additional information from Burge's treating physician concerning his history of anxiety.  On January 16, 2003, after receiving materials from Burge's treating psychiatrist, the reviewing doctor recommended that Burge be medically disqualified for the CSO position because of his diagnosis of Generalized Anxiety Disorder.  MVM removed Burge from the USMS contract and terminated him on February 4, 2003.

Plaintiff Churm began working for MVM as a CSO on October 1, 2001.  He had submitted to a required annual medical examination in June of that year, while working for MVM's predecessor.  After reviewing the results of that examination, the USMS reviewing doctor requested supplemental medical reports regarding Churm's diabetes.  After receiving no response, the reviewing doctor requested the information a second time on April 22, 2002.  Churm's personal physician, Dr. Ihab Dana, submitted a letter on September 17, 2002.  On a Medical Review Form dated October 2, 2002, the reviewing doctor informed Churm

-4-

that Dr. Dana's letter was not responsive to his requests, and he again asked Churm to submit the originally requested supplemental information.  Churm did not respond, and on March 27, 2003, based upon the results of his June 20, 2001 examination, Churm was medically disqualified due to his poorly controlled diabetes.  MVM removed him from the USMS contract and terminated him on April 28, 2003.

Plaintiff Smith began working for MVM as a CSO on October 1, 2001.  He had submitted to a required annual medical examination in March of that year, while working for MVM's predecessor.  In June or July of that year, the USMS reviewing doctor sought more medical information from Smith before determining whether Smith was medically qualified.  Smith supplied the requested information regarding his hearing.  On March 29, 2002, the reviewing doctor concluded that Smith was medically disqualified from the CSO position because he did not meet the hearing requirements.  On April 2, MVM removed Smith from the USMS contract and terminated his employment.  After the final decision was made, Smith attempted to submit additional medical information to the USMS.

Plaintiffs Adams, Burge, Churm and Smith brought suit challenging their terminations in 2003.  The Federal Defendants and MVM each filed a motion for summary judgment against the present plaintiffs on December 21, 2005.  Briefing on these motions was nearly complete when the court placed the matter in suspense on April 24, 2006 pending a decision from the Court of

Appeals in <u>Wilson v. MVM</u>, 475 F.3d 166 (3d Cir. 2007).  <u>Wilson</u> presented many of the same issues facing the court in the instant matter.  <u>Wilson</u> was decided by the Court of Appeals on January 29, 2007, and this case was removed from suspense on July 2 of that year.  All parties were given opportunities to submit supplemental briefing to the motions for summary judgment by the Federal Defendants and MVM to address the impact of the <u>Wilson</u> decision and developments that had occurred in other, similar cases.

   III.  CLAIMS AGAINST FEDERAL DEFENDANTS – DUE PROCESS CLAUSE

          Plaintiffs Burge, Churm and Smith each allege that their procedural rights under the Due Process Clause of the Fifth Amendment were violated by the Federal Defendants when the USMS found them to be medically disqualified.  The <u>Wilson</u> decision is clearly dispositive of the due process claims of Burge, Churm and Smith.  In <u>Wilson</u>, three CSOs employed by MVM and found to be medically disqualified by the USMS brought suit contending, inter alia, due process violations by the Federal Defendants.

          The <u>Wilson</u> court concluded that the CSOs had a constitutionally protected property interest in their employment, and that the USMS had deprived them of that interest.  <u>Id.</u> at 177.  Thus, the court determined that the CSOs were entitled to procedural due process, the basic requirements of which are notice and an opportunity to be heard.  <u>Id.</u> at 178.  To determine the precise contours of the notice and hearing required before the CSOs could be found medically disqualified, the court

balanced the plaintiff's interest in continued employment against the government's interest in "providing healthy, physically qualified security to protect its court houses and employees." Id. at 178-79.  The court then examined "the risk of error in the procedure used compared with the degree of improved accuracy that additional procedures would provide."  Id. citing Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976).

The Wilson court held that the CSOs were accorded sufficient process under the Due Process Clause and affirmed this court's decision granting the Federal Defendants' motion for summary judgment on this question.  Id. at 179.  The court explained:

> After the appellants were termed medically
> disqualified, but before they were
> terminated, they were provided with notice of
> their medical disqualification and offered an
> opportunity to respond with medical
> documentation from their own doctors
> regarding their ability to perform their
> positions.  While this is not a traditional
> hearing, the process afforded the appellants
> is sufficient given the balance of their
> interest in maintaining employment and the
> government's interest in security.  A more
> rigorous process would not significantly
> enhance the accuracy of the medical
> qualification process.

Id. at 178-79, citing Matthews, 424 U.S. at 335.

The relevant facts of Wilson are identical to the facts of the present case.  The evidence in this case is uncontested that plaintiffs Burge, Churm and Smith were each provided with letters informing them of their medical disqualification and that they were afforded the opportunity to submit additional medical

-7-

documentation before a final decision was made.  Contrary to
Burge's present claim that "[t]here is absolutely no due process
(or any type of process) to correct or challenge an erroneous
determination by the health service doctor," the Court of Appeals
recognized that the medical review process employed by the USMS
afforded each of the applicants sufficient notice and an
opportunity to be heard so as to satisfy the requirements of the
Constitution.

        Although there is no dispute as to the procedure used
by the USMS to make the medical determinations, plaintiffs Smith
and Churm argue that they were nonetheless denied due process.
Plaintiff Smith argues that the failure of the USMS to consider
medical documentation provided to the USMS after the final
determination had been made and he was terminated violated his
due process rights.  The Court of Appeals in Wilson clearly ruled
that due process was satisfied by an opportunity to submit
medical evidence *before* a final decision was made.  Id.  Smith's
argument is to no avail and his post-determination medical
evidence does not create a disputed issue of fact in this case.
Plaintiff Churm maintains that he was financially unable to
provide additional medical documentation regarding his diabetes
although he was given the opportunity to do so.  He contends that
the government's failure to pay for this additional medical
examination violated his right to due process.  Churm, however,
does not cite any support for the contention that the government
must shoulder this expense, and we decline to require it.  We

will grant the Federal Defendants' motion for summary judgment as
to the due process claims against it by Smith and Churm.

    IV.  CLAIMS AGAINST FEDERAL DEFENDANTS – REHABILITATION ACT

        Plaintiffs Adams, Burge, Churm and Smith each allege
that the Federal Defendants violated Section 504 of the
Rehabilitation Act when those defendants found the plaintiffs to
be not medically qualified to perform the essential functions of
the CSO job.  Section 504 of the Rehabilitation Act of 1973, as
amended, states that

> No otherwise qualified individual with a
> disability in the United States ... shall,
> solely by reason of her or his disability, be
> excluded from participation in, be denied the
> benefits of, or be subjected to
> discrimination under any program or activity
> receiving Federal financial assistance or
> under any program or activity conducted by
> any Executive agency ....

29 U.S.C. § 794(a).  Section 504 incorporates the substantive
liability standards of the Americans with Disabilities Act (ADA).
Id. at § 794(d).  To make out a prima facie case of
discrimination under the ADA, each plaintiff must show that:  (1)
he is disabled within the meaning of the ADA; (2) he is otherwise
qualified to perform the essential functions of the job, with or
without reasonable accommodations by the employer; and (3) he has
suffered an adverse employment decision.  Shaner v. Synthes, 204
F.3d 494, 500 (3d Cir. 2000).

        The Federal Defendants first argue that none of the
plaintiffs is disabled within the meaning of the ADA.  The ADA
defines "disability" as:  (1) a physical or mental impairment

-9-

that substantially limits one or more of the major life
activities; (2) a record of such impairment; (3) being regarded
as having such an impairment.  42 U.S.C. § 12102(2).  The
plaintiffs allege that they were regarded as disabled by the
USMS.  The plaintiffs must do more than demonstrate that the USMS
was aware that each of them had an impairment.  <u>Sutton v. United
Air Lines</u>, 527 U.S. 471, 491-92 (1999).**²**  Instead, a person is
regarded as disabled within the meaning of the ADA if he can
demonstrate that:  (1) the defendant "mistakenly believes that a
person has a physical impairment that substantially limits one or
more major life activities," or (2) the defendant "mistakenly
believes that an actual, non-limiting impairment substantially
limits one or more major life activities."  <u>Id.</u> at 489.  The mere
fact that an employer has medical requirements in place does not
mean that the employer regards any employee who does not meet
those requirements as being substantially limited in one or more
major life activities.  <u>Id.</u> at 490.

          Plaintiffs Adams and Burge, filing jointly, argue that
there are disputed questions of material fact as to whether their
disqualifications from the USMS contract were based on the
erroneous perception that their disabilities would substantially
limit them in the major life activity of working.  Essentially,

---

2.  In the <u>Sutton</u> case, the plaintiffs were suing an employer who
had rejected their applications.  The court has held in this case
that the USMS was not plaintiffs' employer.  Nonetheless, cases
against employers are relevant in considering Plaintiffs'
Rehabilitation Act claim.

they argue that the USMS reviewing physicians made a determination not only as to whether Adams and Burge would be able to perform the essential functions of a CSO, but also made a broader determination of these plaintiffs' ability to perform any job in the law enforcement profession.  Adams and Burge argue that if the USMS did conclude that they would be unable to perform any law enforcement position because of their medical conditions, the USMS perceived them as disabled.

Adams and Burge claim that two pieces of evidence create a disputed issue of material fact on this question. First, in their brief, the plaintiffs include excerpts from letters sent by the USMS to MVM regarding the medical disqualification determinations of twelve other MVM employees. Plaintiffs contend that these letters contain language suggesting that the USMS regarded the employees named in them as unable to perform the essential functions of any law enforcement position. These letters are insufficient to establish a disputed issue of material fact for two reasons.  First, having failed to provide a copy of these letters to either the court or opposing counsel, Adams and Burge may not rely on them to create an issue of disputed fact.  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The excerpts listed in the plaintiffs' brief are not themselves sufficient to create an issue of disputed fact.  Helmich v. Kennedy, 796 F.2d 1441, 1443 (11th Cir. 1986), citing Sims v. Mack Truck Corp., 488 F. Supp. 592, 597 (E.D. Pa. 1980).  Second, even if the plaintiffs had included the letters in a proper

-11-

evidentiary form, they would be incapable of establishing an issue of disputed fact. Adams and Burge are not among the twelve individuals referenced in those letters. Because the question of "whether a person has a disability under the ADA is an individualized inquiry," Sutton, 527 U.S. at 483, evidence regarding other individuals is irrelevant to the question of whether the USMS perceived Adams and Burge as substantially limited in any major life activities.

Adams and Burge also attempt to rely on the deposition testimony of Dr. John M. Janzen, Ph.D., a vocational and psychological rehabilitation expert, to show the existence of a disputed issue of material fact as to whether the USMS regarded them as disabled. Plaintiffs maintain that Dr. Janzen testified that if they were medically disqualified from the CSO position, they would necessarily be disqualified from a number of other jobs as well. Again, plaintiffs' attempts fail because they have not submitted such testimony for the court's review. Thus, the court cannot address the parties' arguments regarding whether this testimony is legally sufficient to create a disputed issue of material fact. The court notes that at least one other court has determined as a matter of law that Dr. Janzen's testimony was insufficient to create a disputed issue of material fact as to whether the USMS regarded CSOs as disabled. Strolberg v. AKAL Sec. Co., 2005 WL 5629026 (D. Idaho 2005), aff'd in relevant part Strolberg v. AKAL Sec. Co., 210 Fed. Appx. 683 (9th Cir. 2006). The Strolberg court based this conclusion on the grounds that Dr.

Janzen imputes the requirements of the CSO job to other jobs
without proffering evidence that the requirements are the same
and that he failed to present evidence regarding the labor
markets and/or jobs from which the plaintiffs were disqualified.
Strolberg 2005 WL 5629026, at 11; see also Sutton, 527 U.S. 491-
92.

Because the undisputed evidence in the record states
that the USMS did not regard plaintiffs Adams and Burge as
disabled, these plaintiffs have failed to make out a prima facie
case, and judgment on their Rehabilitation Act claims will be
entered for the Federal Defendants.

Plaintiffs Churm and Smith, also filing jointly,
contend that the USMS regarded each of them as disabled.  Churm
alleges that the USMS regarded him as disabled from working,
particularly, working in the broad class of jobs in the law
enforcement profession, because they believed him to have
uncontrolled diabetes.  He argues that the USMS also believed
that anyone with uncontrolled diabetes would have symptoms that
would necessarily significantly limit his ability to work as a
law enforcement officer of any kind.  Smith maintains that he was
regarded as disabled by the USMS because the reviewing doctor
found him to have "significant hearing loss in the conversational
range."  Smith claims that such a determination necessarily would
mean that the USMS found Smith to be substantially limited in the
major life activity of hearing.  The USMS maintains that it did
not regard Churm and Smith as substantially limited in any major

-13-

life activity and that its only concern was whether plaintiffs were medically qualified to perform the essential functions of the CSO position.

Churm and Smith first argue that the USMS subjectively considered them to be disabled.  They assert that a determination that a CSO is medically disqualified based on diabetes or hearing loss is also necessarily a judgment by the USMS that it regarded the CSO as disabled.  We are not persuaded.  The Supreme Court has clearly stated that employers may use appropriate medical requirements to determine a candidate's qualifications to work in a particular position.  The mere fact that an employer has such requirements in place does not mean than the employer regards an employee who cannot meet the requirements as disabled.  Sutton, 527 U.S. at 490; see also, Walton, 492 F.3d 998.

Churm and Smith also contend that the deposition testimony of Dr. Richard Miller and Marc Farmer creates a disputed issue of material fact as to whether or not the USMS regarded them as disabled.  The plaintiffs both rely heavily on the testimony of Dr. Miller, the Medical Consultant for Federal Occupational Health who originated, implemented and applied the new medical standards for CSOs.  Plaintiffs state that "Dr. Miller testified that the CSOs who did not meet the new medical standards had significant physical or medical impairments." Pls.' Smith and Churm Mem. in Opp'n at 18.  For this proposition, plaintiffs refer generally to thirty-three pages of Dr. Miller's deposition testimony.  The court was only provided with fifteen

-14-

of those thirty-three pages.  In the portion of Dr. Miller's
deposition testimony received by the court, the witness never
states that a CSO who was medically disqualified had significant
physical or medical impairments and nothing he said could be
construed to support this.  Moreover, even if Dr. Miller had made
such a statement, it would not have created a disputed issue of
material fact.  As the Court of Appeals has explained, "the mere
fact that an employer is aware of an employee's impairment is
insufficient to demonstrate either that the employer regarded the
employee as disabled or that that perception caused the adverse
employment action."  Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d
Cir. 1996); Wilson, 475 F.3d at 179.

        Both Churm and Smith cite to specific portions of Dr.
Miller's testimony.  Plaintiffs' interpretation of these portions
is similarly flawed.  Churm claims that:

            Dr. Miller testified that CSOs with
            uncontrolled diabetes would likely suffer
            from cognitive impairment, loss of sensation
            in limbs, somnolence, fatigue and vision
            impairment.  Exhibit 16, Miller Depo. Tr. II
            at 45-47.  He testified that those symptoms
            would cause a 'significant reduction' or
            'significant limitation' in those CSOs'
            ability to work under stress, work alone
            while armed, use their weapons, stand, walk,
            run, and see.  Id.  Dr. Miller also testified
            that 'if he recommended a medical
            disqualification that there would be a
            significant reduction in the CSOs' ability to
            perform one or more of these essential job
            functions.'

Pls.' Smith and Churm Mem. in Opp'n at 21-22.

-15-

In the section of Dr. Miller's deposition transcript referred to by Churm, Dr. Miller was asked to give examples of how symptoms of uncontrolled diabetes could hypothetically impede performance of some of the essential functions of the CSO position.  Contrary to Churm's contention, Dr. Miller never testified as to the likelihood that CSOs with uncontrolled diabetes would suffer from any or all the symptoms listed nor that any of those symptoms would result in the "significant reduction" or "significant limitation" of any of the listed major life activities.  Instead, Dr. Miller's testimony concerned itself solely with theoretical symptoms and examples of how these symptoms could potentially affect performance of specific job functions of the CSO position.  As Dr. Miller stated later during his deposition:

> Q:   In general do you believe that a CSO who
>      has been disqualified based on diabetes
>      is substantially limited in one or more
>      of the abilities [previously discussed]?
>
> A:   It would be my opinion that there is a
>      significant limitation in the ability to
>      perform one or more essential job
>      functions.

Miller Dep. Tr. at 53:15-54:3.  "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(i); Sutton, 527 U.S. at 493.

Plaintiff Smith also relies on Dr. Miller's testimony, contending that:

> Dr. Miller testified that he believed that
> CSOs who were medically disqualified on the
> basis of their hearing had a 'significant
> reduction in their ability to hear.'  Exhibit
> 16, Miller Depo. Tr. II at 39. ... By this
> very definition, Dr. Miller subjectively
> regarded the CSOs who were medically-
> disqualified [sic] because of their hearing
> as disabled for the purposes of the ADA.

Like Churm, Smith misinterprets Dr. Miller's testimony.  In fact,

in the exchange cited by Smith, Dr. Miller clearly limited his

opinion to the specific job functions of a CSO:

> Q:  Do you believe though that if you
>     disqualified a CSO based on hearing loss
>     that the state of their hearing is such
>     that they're significantly impaired?
>     Were those your words?  Significantly
>     limited?  I can't remember the words you
>     used.
>
> A:  Significant reduction in their ability.
>
> Q:  Significant reduction in their ability
>     to hear in one of the ways listed in the
>     essential job functions?
>
> A:  Yes.

Miller Dep. Tr. at 39:2-39:12.  Dr. Miller was similarly explicit

in an earlier exchange:  "If we disqualified a CSO based on the

hearing requirement, it would be my opinion that their hearing

loss causes a significant reduction or inability to perform

safely these essential job functions."  Miller Dep. Tr. at 38:6-

38:10.

Smith also attempts to support his position by citing

to the testimony of Marc Farmer, the Assistant Director of the

Judicial Security Division of the USMS, who is responsible for

providing oversight for the CSO program.  Smith alleges that:

-17-

> Mr. Farmer believed that CSOs who were
> medically disqualified for hearing loss could
> not understand speech in face-to-face
> conversations, understand speech on the
> telephone, understand speech on radio
> transmissions, understand speech when they
> could not see the person speaking and hear
> sounds that require investigation.  The
> reasonable inference is that a person who
> cannot hear in the above-listed ways is
> substantially limited in his or her ability
> to hear.

Regardless of whether the inference Smith draws is a reasonable

one, he mis-characterizes the evidence from which the inference

is drawn, that is, the testimony of Mr. Farmer.  In the testimony

cited by Smith, Mr. Farmer is unequivocal:

> Q   So [CSOs] are removed from the contract
>     once they are medically disqualified,
>     correct?
>
> A   Correct.
>
> Q   And the reason that they are medically
>     disqualified is because you regarded
>     them as being unable to perform the
>     essential functions of their job,
>     correct?
>
> A   I didn't regard them in any way other
>     than saying that they did not meet the
>     medical qualifications.
>
>                     ...
>
> Q   Is it your testimony or your belief that
>     a CSO who is medically disqualified can
>     perform the essential functions of the
>     job?
>
> A   They didn't meet the contract standards
>     so, therefore, they can't perform them.

Farmer Dep. Tr. at 103:20-104:15.

-18-

Taken in the light most favorable to the plaintiffs, the deposition testimony of neither Dr. Miller nor Mr. Farmer raises a disputed issue of material fact as to whether the USMS regarded the plaintiffs as disabled.  The testimony cited by plaintiffs is evidence only of the deponents' belief that the plaintiffs could not safely perform their jobs.  Because neither Dr. Miller nor Mr. Farmer expresses an opinion as to whether the USMS regarded the plaintiffs' impairments as substantially limiting a major life activity, plaintiffs cannot rely on that testimony to show that the USMS regarded them as disabled.

Churm and Smith next argue that the impairments allegedly imputed to them by the USMS would as an objective matter substantially limit the plaintiffs in one or more major life activities.  Churm contends that having uncontrolled diabetes is an impairment that substantially limits a person's ability to work in the law enforcement profession.  He claims that this impairment would limit an individual's ability to sit or stand in one position for long periods of time and would render that person incapable of carrying a firearm.  Such limitations, he argues, would result in that person's disqualification from law enforcement jobs generally.  Thus, if the USMS disqualified Churm on the ground that his diabetes was not under control, the impairments inherent in that finding would substantially limit him in the major life activity of working in the law enforcement profession.

-19-

To support this contention, Churm relies again on the deposition testimony of Dr. Miller.  As explained above, Dr. Miller's testimony was limited to symptoms that could hypothetically result from uncontrolled diabetes and the potential effects those symptoms could have on the performance of the CSO's duties.  His testimony cannot be used to show that any individual suffering from uncontrolled diabetes would necessarily suffer any particular symptoms.  Moreover, the undisputed evidence in the record establishes that Churm was dismissed, at least in part, because he repeatedly failed to comply with requests for medical information.  Although the reviewing doctor had concerns about Churm's control of his diabetes based on the limited information available, he was unable to make a final determination as to whether Churm was qualified to perform the essential functions of the CSO position.  Thus, there is no evidence that Churm was regarded as disabled or was "excluded from the position sought solely by reason of his [perceived] disability," as required by the Rehabilitation Act, 29 U.S.C. § 794(a).

Smith maintains that the USMS's determination that he had "significant hearing loss in the conversational range" and that such an impairment would necessarily substantially limit the major life activity of hearing.  Smith does not cite any evidence in support of this proposition.  In fact, the undisputed evidence in the record is from Dr. Barson, the physician who reviewed

Smith's medical examination results.  In his declaration, Dr.
Barson explains why Smith was disqualified from the CSO position:

> Mr. Smith did not meet the required standards
> for the unaided pure-tone audiogram tests or
> the unaided functional hearing tests.  The
> tests confirmed a decreased ability to hear
> soft sounds and to distinguish speech,
> especially in background noise. ... My
> determination regarding Mr. Smith was solely
> limited to his ability to perform the
> essential functions of the CSO position. I
> neither considered nor reached any conclusion
> about whether Mr. Smith's hearing condition
> disqualified him from other jobs (including
> other law enforcement jobs) or whether it
> substantially limited his day-to-day
> activities.

Barson Decl. ¶ 6.  Smith has not come forward with any evidence
that the USMS regarded him as having "a severe restriction on the
use of ... hearing compared to how unimpaired individuals
normally use their hearing in daily life."  Walton, 492 F.3d 998,
1008, citing Toyota Motor Mfg. v. Williams, 534 U.S. 184, 200-01
(2002).

      Because neither Churm nor Smith has raised a disputed
issue of material fact as to whether the USMS regarded them as
disabled, judgment on their Rehabilitation Act claims will be
entered for the Federal Defendants.  Numerous other federal
courts have come to the same conclusion in cases with
substantially the same factual predicate.  E.g. Walton, 492 F.3d
998, affirming Walton v. U.S. Marshals Serv., 2005 WL 2230151
(N.D. Cal. Sept. 13, 2005); Strolberg, 2005 WL 5629026, aff'd in
relevant part Strolberg, 210 Fed. Appx. 683; Smith v. U.S.
Marshals Serv., 2006 WL 297725, at *4-5 (D. Vt. Feb. 7, 2006);

Hurlbut v. Akal Security, Inc., No. 04-121 (S.D. Ga. Feb. 15, 2006); Beck v. U.S. Marshals Serv., Civ.A. No. 02-1579-L (W.D. Okla. Dec. 1, 2004); McMullin v. Ashcroft, 337 F. Supp. 2d 1281, 1298-99 (D. Wyo. 2004).  But see Gunnels v. Akal Security Inc., No. 02-132 (S.D. Tex. Feb. 20, 2004).

### V.   CLAIMS AGAINST MVM

We now turn to the claims remaining against defendant MVM.  First, plaintiff Adams alleges that MVM violated the ADA, 42 U.S.C. § 12101, *et seq.*, and NJLAD, NJS 10:5-1, *et seq.*, when it dismissed him.[3]  ADA and NJLAD claims are analyzed using the same standards and burdens of proof, as set out above.  Lawrence v. Westminster Bank New Jersey, 98 F.3d 61, 70 (3d Cir. 1996). Adams asserts that MVM regarded him as disabled because MVM mistakenly regarded his diabetes as substantially limiting him in the major life activity of working.  To be regarded as substantially limited in the major life activity of working, one must be precluded from more than a particular job.  Murphy v. United Parcel Service, Inc., 527 U.S. 516, 521-22 (1999).

The uncontested evidence in this case is that MVM did not regard Adams as substantially limited in the major life activity of working.  Adams was removed from his position as a CSO only because he did not meet the medical standards

---

3.  Although Adams has not responded in any of his briefs to MVM's motion for summary judgment on this claim, we may not grant a motion for summary judgment solely on the grounds that it is unopposed.  E.D. Pa. Loc. R. Civ. P. 7.1.

established for the position by the USMS.  After Adams had been removed from the Third Circuit contract, MVM attempted to keep Adams on as an employee.  On May 5, 2004 MVM offered him a position under its contract with the General Services Administration in Newark, New Jersey.  Adams rejected this offer. Clearly, MVM did not regard Adams as substantially limited in the major life activity of working.  Because Adams has failed to make out a prima facie case on his disability discrimination claim, MVM's motion for summary judgment on this claim will be granted.

Next, plaintiff Smith brings a claim against MVM for violation of procedural due process.  Smith argues that MVM did not afford him "appropriate procedures and hearing opportunities to protest or contest any inappropriate application of medical standards, interpretation of medical standards, or medical testing or any other reason which was improperly invoked or utilized by the USMS in withdrawing their credentials."  Fourth Am. Compl. ¶ 27.

Private conduct is not subject to the due process clause of the Fifth Amendment to the United States Constitution, Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).  Only those who are state actors can incur liability for failure to adhere to this constitutional requirement.  Even if MVM is deemed a state actor for due process purposes,[4] it was not compelled to provide

_____

4. In Wilson, the Court of Appeals was presented with the question of whether MVM was a state actor, but did not decide it. Wilson, 475 F.3d at 176.  Instead, the Court of Appeals concluded
                                                      (continued...)

a due process hearing to Smith because it would have been unnecessary and meaningless under the circumstances.

As we detailed earlier in this opinion, the Court of Appeals in <u>Wilson</u> held that the process provided by the USMS was sufficient to protect the plaintiffs' protected interests "in their continued employment with MVM." <u>Wilson</u>, 475 F.3d at 178. Here, the evidence is undisputed that the USMS gave Smith all the process to which he was entitled under <u>Wilson</u>. <u>Supra</u>, pgs. 6-8; <u>Wilson</u>, 475 F.3d at 178-79. Specifically, "after [Smith] was termed medically disqualified, but before [he was] terminated, [he was] provided with notice of his medical disqualification and offered an opportunity to respond with medical documentation from [his] own doctors regarding [his] ability to perform [his] position[]." <u>Id.</u> Smith, however, argues that MVM should have given him an additional hearing on the question of his medical qualifications. We will assume without deciding that Smith had a sufficient property interest in the medical determination, as opposed to his "continued employment with MVM" more generally, and that he may assert due process rights against MVM with respect to that determination. <u>Id.</u> at 177-78; <u>see</u> <u>also</u> <u>Stein v. Board of City of N.Y.</u>, 792 F.2d 13, 16-17.

---

4.(...continued)
that: "Even if we were to determine that MVM was an arm of the government, the [plaintiffs'] due process claims against MVM must fail because they failed to take advantage of the grievance process provided to them in the [collective bargaining agreement with MVM]." <u>Id.</u>

The law does not require a meaningless act.  See Abdallah v. Abdallah, 359 F.2d 170, 175 (3d Cir. 1966); McCandless v. Vaughn, 172 F.3d 255, 266 (3d Cir. 1999).  If, as Smith contends, MVM and the USMS were in a "symbiotic relationship,"  the process provided by the USMS is sufficient to satisfy Smith's procedural entitlements with respect to MVM as well.[5]  This is particularly so when, as here, MVM did not have the authority to bind the Federal Defendants by its decision as to plaintiff's medical qualifications.  The contract between the USMS and MVM mandates that all contract CSO employees, such as Smith, undergo an annual medical examination and that they meet each of the medical standards that the USMS requires:

> Failure to meet any one of the required medical and/or physical qualifications will disqualify any employee for appointment or continuation under the contract.  If a CSO fails to meet the medical and/or physical standards upon reexamination, the CSO shall be relieved of duties until the problem is corrected or the employee is officially removed from the CSO program.

Third Judicial Circuit Award Contract at pg. C-11.  The contract makes clear that it is the reviewing physician of the USMS who

---

5.  Similarly, in Stein v. Bd. of City of N.Y., a public school bus driver working for a private company brought an action in federal court alleging deprivation of due process when he was terminated without receiving adequate notice or a fair hearing. 792 F.2d 13 (2d Cir. 1986).  The contract between the Board of Education and the private company specified that the company would "only employ persons of good moral character to serve as vehicle operators." Id. at 14.  The plaintiff was terminated after allegations that he had exposed himself while driving the bus. Id.  The notice and hearing the plaintiff received, although ultimately inadequate, were provided by the Board of Education, not his private employer.

makes the ultimate determination about a CSO's medical fitness
and that MVM plays no role whatsoever with respect to any
decision concerning the medical qualifications to be or continue
to be a CSO.  If a CSO does not meet the medical qualifications
established by the USMS, he is not permitted to work under the
contract as a CSO.  MVM cannot override this decision.

Given this explicit contractual delineation, Smith does
not explain what benefit would accrue to him by requiring MVM to
duplicate the process provided by the USMS.  Even if MVM
conducted a hearing on this question, it is undisputed that under
the terms of the Third Circuit contract it was only the USMS, not
MVM, who had the authority to make the determination as to
whether a CSO was medically qualified.  Thus, to the extent that
Smith seeks to require MVM to provide him with procedural due
process as to the question of his medical qualification, his
motion will be denied since he has already been provided a proper
due process hearing by the USMS.

Smith does not seek due process as to any issue other
than the question of his medical disqualification.  In
particular, he does not argue that MVM terminated him without
good cause.  The only evidence in the record on this point is
that MVM terminated Smith because it did not have any other
positions to offer him at the time he was removed from the Third
Circuit contract.  Smith concedes that MVM did not have any such
positions at that time, and thus implicitly, that his termination
on this ground was for good cause.

-26-

VI.

In sum, the motions for summary judgment of the Federal Defendants and MVM will be granted.

```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GEORGE LEITCH, et al.            :          CIVIL ACTION
                                 :
          v.                     :
                                 :
MVM, INC., et al.                :          NO. 03-4344
```

_____ORDER_____

AND NOW, this 19th day of November, 2007, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that:

(1)  the motion of the United States Marshals Service,
the Department of Justice, Attorney General John Ashcroft, and
the United States for summary judgment (Doc. No. 165) is GRANTED;

(2)  judgment is entered in favor of the United States
Marshals Service, the Department of Justice, Attorney General
John Ashcroft, and the United States and against plaintiffs
Benjamin Adams, William Burge, Lawrence Churm, and Donald Smith;

(3)  the motion of defendant MVM, Inc. for summary
judgment (Doc. No. 164) is GRANTED; and

(4)  judgment is entered in favor of defendant MVM,
Inc. and against plaintiffs Benjamin Adams and Donald Smith.

BY THE COURT:


/s/ Harvey Bartle III
_____
                                     C.J.